IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROOSEVELT LAMAR BRADLEY,

    Plaintiff,

v.

219 SOUTH MEMORIAL LLC and
KWIK SHOP STORES, INC.,

    Defendants.

Case No.

2:20-cv-191

## COMPLAINT

### I.  INTRODUCTION

Plaintiff, Roosevelt Lamar Bradley (hereinafter, "Plaintiff" or "Mr. Bradley"), files this Title III, Americans with Disabilities Act (hereinafter, "ADA") action against Defendants, 219 South Memorial LLC and Kwik Shop Stores, Inc. (hereinafter, "Defendants" or "219" and "Kwik"), pursuant to 42 U.S.C. §12181 *et seq*. In Count One of the Complaint, Plaintiff seeks to enjoin Defendants to remove architectural barriers from Defendants' facility. In Count Two of the Complaint, Plaintiff seeks to enjoin Defendants to maintain policies, practices, and procedures necessary to maintain Defendants' facility free of architectural barriers both now and once the architectural barriers are removed from Defendants' facility. In Count Three of the Complaint, Plaintiff seeks to enjoin Defendants' use of Defendants' facility to provide full and equal enjoyment of Defendants' facility to individuals with disabilities. Count Two of the Complaint and Count Three of the Complaint seek independent relief in addition to the removal of architectural barriers from Defendants' facility. In Count Four of the Complaint, Plaintiff seeks to enjoin Defendants' failure to design and construct Defendants' facility to ADA compliance.

## II.    JURISDICTION, PARTIES, AND ARTICLE III STANDING

1. This action is for declaratory relief and injunctive relief, pursuant to 42 U.S.C. §12181 *et seq.*, Title III of the ADA and implementing regulations; therefore, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2. Venue is proper in this Court, the United States District Court for the Middle District of Alabama, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Middle District of Alabama.

3. Mr. Bradley's right leg was amputated a few inches above his knee. The extent of Mr. Bradley's physical impairments limits his ability to perform manual tasks, walk, stand, lift, and bend, all of which are major life activities pursuant to 42 U.S.C. §12102(2)(A). Therefore, Mr. Bradley is disabled pursuant to the ADA, in that he suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. §12102; *see also*, 28 C.F.R. §36.104.

4. Defendants are limited liability companies that are both registered to conduct business and are conducting business within the State of Alabama sufficient to create both general and specific *in personam* jurisdiction. Upon information and belief, 219 owns and Kwik operates the real property and improvements located at 219 S Memorial Drive, Prattville, Alabama 36067. Defendants' facility is a Petro Mart convenience store, a place of public accommodation pursuant to 42 U.S.C. §12181(7).

5. All events giving rise to this lawsuit occurred in the Middle District of Alabama and Defendants are citizens thereof.

6. Mr. Bradley is a resident of Prattville, Alabama, and he lives 3.7 miles from this Petro Mart. He has been to this Petro Mart at least a half dozen times and maybe more. He drives past

Petro Mart numerous times each week. He will return to the Petro Mart not only for gas and

food items but also to confirm compliance with the ADA by Defendants. Mr. Bradley will

return to Defendants' facility within the next month; however, he cannot specify the exact

date because he has not planned every trip and purchase for the rest of his life. Such specific

planning is not necessary to invoke the ADA. *See, e.g., Parr v. L&L Drive Inn Restaurant,*

96 F. Supp. 2d 1065, 1079 (D. Haw. 2000); *Segal v. Rickey's Restaurant and Lounge, Inc.,*

No. 11-61766-cn (S.D. Fla. 2012) ("Specification as to date and time of return to this public

accommodation is impossible due to the nature of the event. Fast food patrons visit such

restaurants at the spur of the moment."). Nevertheless, Mr. Bradley definitely intends to

return to Defendants' facility.

7. Mr. Bradley has been denied full and equal enjoyment of Defendants' convenience store on

the basis of his disability because of the barriers described below in paragraph nineteen (19)

and throughout the Complaint.

8. Mr. Bradley has Article III standing to pursue this action because of the following: (1) Mr.

Bradley is disabled, pursuant to the statutory and regulatory definition, (2) Defendants'

convenience store is a place of public accommodation pursuant to the statutory definition and

the regulatory definition, (3) Mr. Bradley has suffered a concrete and particularized injury by

being denied access to Defendants' convenience store, and by Defendants' denial of the use

of Defendants' convenience store for Plaintiff's full and equal enjoyment, as described

throughout the Complaint, and (4) because of these injuries, there exists a genuine threat of

imminent future injury, as described in paragraph seventeen (17) below.

## III.    PLAINTIFF'S CLAIMS

### ADA, TITLE III

9.  Congress enacted Title III of the ADA, 42 U.S.C. §12181 *et seq.* on or about July 26, 1990. Commercial enterprises were provided one and a half years from enactment of the statute to implement the requirements. The effective date of Title III of the ADA was January 26, 1992. 42 U.S.C. §12181; 20 C.F.R. §36.508(A); *see also*, §36.304.

10. Pursuant to 42 U.S.C. §12181(7)(B) and 28 C.F.R. §36.104, Defendants' facility is a place of public accommodation in that Defendants' facility is a convenience store providing goods and services to the public. Therefore, Defendants' public accommodation is covered by the ADA and must comply with the ADA.

### COUNT ONE
### VIOLATION OF THE ADA, TITLE III
### 42 U.S.C. §12182(b)(2)(A)(iv)
### Architectural Barriers

### Defendants' Facility is Subject to the 2010 ADA Design Standards for the Portions of the Facility Addressed in the Complaint.

11. Plaintiff is informed and believes based on publicly available information that the building in which Defendants' convenience store is located at 219 S Memorial Drive, Prattville, Alabama 36067 was first constructed in 1945 with alterations and/or improvements in 2003.

12. The ADA was enacted requiring that facilities constructed prior to January 26, 1992 are considered existing facilities, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. §12182(b)(2)(A)(iv). All alterations made to existing facilities after January 26, 1992, and all new construction after January 26, 1993, must be readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs. 42 U.S.C. § 12183(a) - (b). 28 C.F.R. §36.402. "Readily

4

accessible to and usable by . . ." is the new construction standard, which requires compliance with the Department of Justice (hereinafter, "DOJ") standards. 42 U.S.C. §12183(a)(1); 28 C.F.R. §36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the new construction standards is if the design and construction of the building to be readily accessible and usable is structurally impracticable. 42 U.S.C. §12183(a)(1). The structural impracticability defense applies only in rare circumstances of extraordinary terrain. 28 C.F.R. §36.401(c). "Readily accessible to and usable by . . ." is also the alterations standard. 42 U.S.C. §12183(a)(2). Alterations must be made to the maximum extent feasible. 42 U.S.C. §12183(a)(2); 28 C.F.R. §36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 C.F.R. §36.402(b).

13. New construction and alterations must comply with either the DOJ's 1991 Standards for Accessible Design or the DOJ's 2010 Standards for Accessible Design. 28 C.F.R. §36.406 establishes whether the 1991 Standards for Accessible Design or the 2010 Standards for Accessible Design apply: New construction and alterations subject to §36.401 or §36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension was certified to be completed by a state, a county, or a local government before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurred before September 15, 2010. 28 C.F.R. §36.406(a)(1). New construction and alterations subject to §36.401 or §36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension was certified to be completed by a state, a county, or a local government on or after September 15, 2010, and before March 15, 2012, or if no permit is

5

required, if the start of physical construction or alterations occurred on or after September 15, 2010 and before March 15, 2012. 28 C.F.R. §36.406(a)(2). New construction and alterations subject to §36.401 or §36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension was certified to be completed by a state, a county, or a local government on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurred on or after March 15, 2012. Where the facility does not comply with the 1991 Standards, the 2010 Standards are applicable. *See* 28 C.F.R. §36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §36.401 or §36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

14. For the architectural barriers at issue in this case, the 2010 Standards for Accessible Design are Applicable.

**Plaintiff's Concrete and Particularized Standing to Pursue an Injunction**

15. Defendants have discriminated, and continue to discriminate, against Plaintiff, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations at Defendants' convenience store in derogation of 42 U.S.C. §12101 *et seq.*, and as prohibited by 42 U.S.C. §12182 *et seq.* As new construction, the building must be readily accessible to and usable by individuals with disabilities. 42 U.S.C. §12183 (a)-(b).  Defendants' failure to remove the existing barriers thus violates 42 U.S.C. §12182(b)(2)(A)(iv), which requires removal of architectural barriers.

6

16. Prior to the filing of this lawsuit, Plaintiff was denied full and safe access to all of the benefits, accommodations, and services offered to individuals without disabilities within and about Defendants' convenience store. Plaintiff's access was inhibited by each of the described architectural barriers detailed in the Complaint, which remain at the convenience store in violation of the ADA. Because of the foregoing, Plaintiff has suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

17. Mr. Bradley has definite plans to return to Defendants' convenience store in the future, as described in paragraph six (6) above. Mr. Bradley will return to Defendants' convenience store, not only to enjoy the goods and services at Defendants' convenience store, but also to see if Defendants have repaired the architectural barriers and changed the policies, practices, and procedures. Mr. Bradley will continue to do so even when Defendants' convenience store is repaired. The barriers are not just created by construction issues; instead, many of the barriers are created by human activity, from the way Defendants' workers at the convenience store use the architectural elements of the store. The barriers created by human activity will need to be reviewed and maintained forever, to be sure Defendants' management and workers continuously act in a manner that does not create barriers. Absent remedial action by Defendants, Mr. Bradley will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein, and as a result, be discriminated against by Defendants on the basis of his disabilities. The Eleventh Circuit held in *Houston v. Marod Supermarkets*, 733 F.3d 1323 (11th Cir. 2013), when architectural barriers have not been remedied ". . . there is a 100% likelihood that plaintiff . . . will suffer the alleged injury again when plaintiff returns to the store." Due to the definiteness of Mr.

7

Bradley's plan to continue visiting Defendants' convenience store, there exists a genuine

threat of imminent future injury. Mr. Bradley's stated intent to return is plausible.

**ARCHITECTURAL BARRIERS**

18. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the DOJ, Office of the

Attorney General, promulgated Federal Regulations to implement the requirements of the

ADA. 28 C.F.R. Part 36.

19. Mr. Bradley has been from the parking lot to the entrance; from the entrance to the sales and

service counters; throughout circulation paths and accessible routes, and service areas, paths

of travel, and in particular but not limited to, all of which is more specifically described

below. Moreover, Defendants' convenience store located at 219 S Memorial Drive,

Prattville, Alabama 36067, violates the ADA in the parking lot and sales and service

counters, and in particular but not limited to:

    (1) Defendants provide a parking area with parking spaces that have routes connecting

       the parking spaces to the entrance of the facility for able-bodied individuals, but fail

       to provide the same level of access by providing an ADA accessible route from

       accessible car parking spaces to an accessible entrance for non-able-bodied

       individuals, which segregates and relegates individuals with disabilities to inferior

       benefits of the goods and services provided at Defendants' place of public

       accommodation, which includes but is not limited to, the following failures of

       Defendants:

    a. Defendants fail to maintain the parking area and an associated accessible route in

       conformance with the ADA Standards for Accessible Design in all the ways that are

       required to be accessible to disabled individuals, which includes but is not limited to,

8

parking spaces failing to be located on an accessible route to the entrance, which has the discriminatory effect of rendering the parking spaces and associated elements as unusable by disabled individuals;

b. The parking area fails to maintain the required amount of accessible parking spaces, including associated accessible access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the level parking spaces measure 96 inches wide minimum with adjoining compliant access aisles that measure 60 inches wide minimum and connect to an accessible route to an accessible entrance of the facility;

c. The parking area fails to maintain the required amount of accessible parking spaces, including associated accessible access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible parking spaces adjacent accessible access aisles extend the full length of the accessible parking spaces and are marked so as to discourage parking in the accessible access aisles, which renders the accessible access aisles unusable by the disabled;

d. The parking area fails to maintain the required amount of accessible parking spaces, including adjoining accessible access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible parking spaces adjacent accessible access aisles do not overlap the vehicular way;

e. The parking area fails to maintain the required amount of accessible parking spaces, including adjoining accessible access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible parking spaces and adjacent accessible access aisles are designed or otherwise maintained in a way

so that when cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes and render the accessible parking spaces as unusable by the disabled;

(2) Defendants provide a parking area with parking spaces that have routes connecting the parking spaces to the entrance of the facility for able-bodied individuals, but fail to provide the same level of access by providing an ADA accessible route from accessible van parking spaces to an accessible entrance for non-able-bodied individuals, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation, which includes but is not limited to, the following failures of Defendants:

a. Defendants fail to maintain the parking area and associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be accessible to disabled individuals, which includes but is not limited to, accessible van parking spaces failing to be located on an accessible route to an accessible entrance, which has the discriminatory effect of rendering the parking spaces and associated elements as unusable by disabled individuals;

b. The parking area fails to maintain the required amount of accessible van accessible parking spaces, including accessible associated access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible van parking space measures 132 inches wide minimum with adjoining compliant access aisles that measure 60 inches wide minimum, or alternatively a 96 inch wide space with an adjoining 96 inch wide access aisle,

and connects to an adjoining accessible route to an accessible entrance of the facility;

c.   The parking area fails to maintain the required amount of accessible van parking spaces, including associated access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible van parking spaces adjacent access aisles extend the full length of the accessible parking spaces and are marked so as to discourage parking in the access aisles, which renders the aisles unusable by the disabled;

d.   The parking area fails to maintain the required amount of accessible van parking spaces, including adjoining access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles do not overlap the vehicular way;

e.   The parking area fails to maintain the required amount of accessible van parking spaces, including adjoining accessible access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible parking spaces are identified with accessibility signage, including the international symbol of accessibility that is mounted 60 inches minimum above the finished floor or ground surface measured to the bottom of the sign;

f.   The parking area fails to maintain the required amount of accessible van parking spaces, including accessible adjoining access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible parking spaces and accessible adjacent access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, cannot obstruct the

11

required clear width of adjacent accessible routes and render the accessible parking spaces as unusable by the disabled;

(3) Defendants provide a parking area with parking spaces that have routes connecting the parking spaces to the entrance of the facility for able-bodied individuals, but fail to provide the same level of access by providing an ADA accessible route from accessible parking spaces to an accessible entrance for non-able-bodied individuals, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendants' place of public accommodation, which includes but is not limited to, the following failures of Defendants:

a. Defendants fail to maintain the parking area and associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be accessible to disabled individuals, which includes but is not limited to, providing all of the necessary components on the ADA accessible route to the entrance, including without limitation ramps, walking surfaces, and other associated elements, which has the discriminatory effect of rendering accessible parking spaces and associated elements as unusable by disabled individuals;

b. The accessible route fails to maintain a ramp and associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the adjacent surfaces at transitions at curb ramps to walks, gutters, and streets are at the same level;

  c. The accessible route fails to maintain a ramp and associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the running slope is not steeper than 1:12;

  d. The accessible route fails to maintain a ramp and associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the cross slope is not steeper than 1:48;

  e. The accessible route fails to maintain a ramp and associated components in operable condition by conforming with the ADA Standards for Accessible Design so that there are no changes in level other than the running slope and cross slope;

(4) The mat at the entrance is not stable, firm, or otherwise properly secured to the floor;

(5) Defendants provide a sales and service counter for able-bodied individuals to transact business and otherwise receive services that are provided at the counter but fail to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendants:

  a. The sales and service counter is not maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals, which has the discriminatory effect of rendering the counter, associated elements, and services offered at the counter as unusable by disabled individuals;

  b. The sales and service counter is not maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible

counter and associated elements are located adjacent to a walking surface complying with 403;

c. The sales and service counter is not maintained in operable condition by conforming with the ADA Standards for Accessible Design so that a portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor is readily usable by disabled individuals, which includes maintaining a clear floor or ground space complying with 305 positioned for either a parallel approach adjacent to the 36 inch minimum length of counter, or alternatively, a portion of the counter surface that is 30 inches long minimum and 36 inches high maximum with knee and toe space complying with 306 provided under the counter and a clear floor or ground space complying with 305 positioned for a forward approach to the counter;

d. The sales and service counter is not maintained in operable condition with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals, which includes but is not limited to, maintaining the clear counter surface free of obstructions or any other clutter that could have the discriminatory effect of rendering the counter and associated benefits and services as unusable by the disabled;

e. The sales and service counter is not maintained in operable condition with the ADA Standards for Accessible Design so that the accessible counter extends the same depth as the non-accessible portion of the counter;

f. The sales and service counter is not maintained in operable condition with the ADA Standards for Accessible Design so that a credit card payment terminal is

positioned or otherwise maintained in an independently usable location at the
accessible counters, which has the discriminatory effect in practice of affording
disabled individuals an unequal opportunity to independently transact business in
the same manner as non-disabled individuals.

20. To date, the barriers to access and other violations of the ADA still exist and have not been
remedied or altered in such a way as to effectuate compliance with the provisions of the
ADA.

21. Mr. Bradley has been obligated to retain the undersigned counsel for the filing and
prosecution of this action. Plaintiff is entitled to have his reasonable attorneys' fees, costs,
and expenses paid by Defendants pursuant to 42 U.S.C. §12205.

22. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff's
injunctive relief, including an Order to alter the discriminating facility to make it accessible
to individuals with disabilities to the extent required by the ADA, and closing the facility
until the requisite modifications are completed, and to further order Defendants to modify the
policies, practices, and procedures, to provide equal use of Defendants' facility, services, and
benefits to disabled individuals.

## COUNT TWO
## VIOLATION OF THE ADA, TITLE III
## 42 U.S.C. §12182(b)(2)(A)(ii)
## Policies, Practices, and Procedures Denying Equal Benefits

### ADA, Title III Prohibits Other Discrimination in Addition to Architectural Barriers

23. Plaintiff incorporates paragraphs 1-22 above.

24. The ADA, Title III provides a private right of action for "any person who is being subjected
to discrimination on the basis of disability in violation of" Title III. 42 U.S.C. §12182(a)(1).

25. The ADA, Title III specifically makes it unlawful to provide individuals with disabilities

with an unequal benefit, and to relegate individuals with disabilities to a different or separate

benefit. 42 U.S.C. §12182(b)(1)(A)(ii)-(iii); 28 C.F.R. §36.202(b)-(c). In other words, the

disabled must receive equal benefits as the nondisabled. Further, 28 C.F.R. §302(b) requires

that goods, services, and accommodations be provided to individuals with disabilities in "the

most integrated setting appropriate." 42 U.S.C. §12182(b)(1)(B); 28 C.F.R. §36.203(a).

Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and

mobility aids have been forced to sit apart from family and friends, also recognizes that

persons who use wheelchairs and mobility aids historically have been provided "segregated

accommodations" compared to non-disabled individuals; thus, relegating persons who use

wheelchairs "to the status of second-class citizens." *See* 28 C.F.R. pt. 36, App. B, at 631-633,

651 (2000) (discussion of §36.308, §36.203).

26. Congress enacted the ADA in light of its findings that "individuals with disabilities

continually encounter various forms of discrimination, including outright intentional

exclusion, the discriminatory effects of architectural, transportation, and communication

barriers, overprotective rules and policies, failure to make modifications to existing facilities

and practices, exclusionary qualification standards and criteria, segregation, and relegation to

lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C.

§12101(a)(5).

27. To address this broad range of discrimination in the context of public accommodations,

Congress enacted ADA, Title III, which provides in part: "No individual shall be

discriminated against on the basis of disability in the full and equal enjoyment of the goods,

services, facilities, privileges, advantages, or accommodations of any place of public

accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §12182.

28. By the clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities more than simple physical access. Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. §12101(a)(5); *see also*, H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

29. For that reason, the ADA applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. §12182. Thus, a public accommodation may not have a policy, practice, or procedure that excludes individuals with disabilities from services. 42 U.S.C. §12182(b)(2)(A)(ii). The Eleventh Circuit held in *Rendon v. Valleycrest Prod., Ltd.*, 294 F.3d 1279, (11th Cir. 2002) that:

30. A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both tangible barriers (emphasis added), that is,

17

physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, *see* 42 U.S.C. §12182(b)(2)(A)(iv), and intangible barriers (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the Defendants entity's goods, services and privileges.

### Defendants' Failed Practices and Lack of Policies are Discriminatory

31. Pursuant to 42 U.S.C. §12182(b)(2)(A)(ii) discrimination includes:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

32. Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to the disabled. Similarly, a place of public accommodation must not have a policy or practice that "has a discriminatory effect in practice" of preventing disabled individuals from realizing the full and equal enjoyment of the goods and services the public accommodation offers to potential customers. *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F.Supp.3d 565 (D. Vt. 2015).

33. As detailed below, Defendants have failed to make reasonable modifications in the policies, practices, and procedures that are necessary to afford the goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendants denied services, segregated, or otherwise treated Plaintiff differently than individuals who are not disabled. Pursuant to 42 U.S.C. §12182(b)(2)(A), Defendants

have discriminated against Mr. Bradley. Defendants will continue that discrimination forever until enjoined as Plaintiff requests. The discrimination is described more particularly in the following paragraphs.

34. Defendants either have no policies, practices, and procedures to remove architectural barriers or else do not abide by them. The rampant architectural barriers previously identified in Count One establish that Defendants have failed to create, adopt, and/or implement ADA, Title III compliance policies, practices, and procedures as to architectural barriers.

35. Defendants' use of Defendants' facility, and the practices at Defendants' facility located at 219 S Memorial Drive, Prattville, Alabama 36067, creates barriers, and in doing so, denies Plaintiff the full and equal enjoyment of Defendants' facility. Those practices include:

    a. Defendants make the parking area inaccessible for use by the disabled by failing to provide ADA accessible parking with connecting accessible routes to the facility from the parking lot, which means that Plaintiff is forced to depend on assistance from a third party to get into Defendants' facility, whereas the non-disabled conveniently access Defendants' facility without the need of third party assistance;

    b. Defendants make the sales and service counters inaccessible;

    c. Defendants fail to provide a place for the disabled to enjoy the goods and services like able-bodied people can;

    d. Defendants' policies, practices, and procedures are conducted without regard to disabled individuals.

36. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendants have no policies, practices, or procedures, or else have failed

to implement them, to ensure that any removal of architectural barriers is permanent. 42
U.S.C. §12182(b)(2)(a)(iv) and (v).

37. As the continuing architectural barriers and the failure to provide full and equal use of the
facility establishes, Defendants' existing practice is both in effect and/or explicitly to
remediate ADA, Title III architectural barriers only upon demand by the disabled.

38. As the continuing architectural barriers and the failure to provide full and equal use of the
facility establishes, Defendants have no policies, practices, and procedures or else
Defendants failed to create, implement, and maintain policies and procedures to ensure
individuals with disabilities are able to have the same experience at Defendants' facility as
individuals without disabilities, 42 U.S.C. §12182(b)(1)(A), and in particular the opportunity
to have full and equal access to all of the goods, services, privileges, advantages, or
accommodations of Defendants' facility, as described above in detail.

39. As the continuing architectural barriers and the failure to provide full and equal use of the
facility establishes, Defendants have failed to create, implement, and maintain a policy of
complying with ADA building and design standards and regulations.

40. To date, Defendants' discriminating policies, practices, and/or procedures have not been
reasonably modified to afford goods, services, facilities, privileges, advantages, or other
accommodations to individuals with disabilities.

41. A reasonable modification in the policies, practices, and procedures described above will not
fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and
accommodations. Plaintiff hereby demands that Defendants both create and adopt a corporate
practice and policy that Defendants (1) will fully comply with Title III of the ADA, and all
implementing regulations so that architectural barriers identified above are permanently

removed from Defendants' facility consistent with the ADA; (2) Defendants will provide the disabled, including those with mobility limitations full and equal use and enjoyment of Defendants' facility; and (3) Defendants will modify the practice of making ADA, Title III architectural barrier remediations only upon demand by the disabled.

42. As pled above, 219 owns and Kwik operates the real property and improvements in which the public accommodation is located at 219 S Memorial Drive, Prattville, Alabama 36067; therefore, pursuant to 42 U.S.C. §12182, are responsible for creating, implementing, and maintaining policies, practices, and procedures, as alleged above.

43. The ADA is over twenty-five (25) years old. Defendants know Defendants must comply with the ADA, Title III. The ADA, Title III requires modifications in policies, practices, and procedures to comply with the ADA, as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

44. By this Complaint, Plaintiff provides sufficient notice of his demands for an alteration in Defendants' policies, practices, and procedures.

45. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have his reasonable attorneys' fees, costs, and expenses paid by Defendant pursuant to 42 U.S.C. §12205.

46. Pursuant to 42 U.S.C. §12188, this Court is authorized to enjoin these illegal policies, practices, and procedures.

## COUNT THREE
## VIOLATION OF THE ADA, TITLE III
### Denial of Full and Equal Enjoyment

47. Plaintiff incorporates paragraphs 1-46 above.

48. 42 U.S.C. §12182(a) provides:

> No individual shall be discriminated against on the basis of
> disability in the full and equal enjoyment of the goods, services,
> facilities, privileges, advantages, or accommodations of any place
> of public accommodation by any person who owns, leases (or
> leases to), or operates a place of public accommodation.

49. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. §12101(a)(2).

50. Congress also found that: "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities," 42 U.S.C. §12101(a)(5); "the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;" 42 U.S.C. §12101(a)(7). Congress even found that: "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity." 42 U.S.C. §12101(a)(8).

51. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. §12101(b)(1) - (2).

52. The ADA provides, *inter alia*, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. §12182(a)(i).

53. The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability . . . with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. §12182(a)(ii).

54. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. §12101(a)(5). Defendants' acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §12101, *et seq.*, and the regulations promulgated thereunder.

55. To address this broad range of discrimination in the context of public accommodations, Congress enacted Title III, which by the clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized

23

that "individuals with disabilities continually encounter various forms of discrimination"
including not only barriers to physical access, but also other forms of exclusion and
relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42
U.S.C. 12101(a)(5); *see also* H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990)
("lack of physical access to facilities" was only one of several "major areas of discrimination
that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is
not sufficient to only make facilities accessible and usable; this title prohibits, as well,
discrimination in the provision of programs and activities conducted by the public
accommodation.").

56. For that reason, the ADA applies not only to barriers to physical access to business locations,
but also to any policy, practice, or procedure that operates to deprive or diminish disabled
individuals' full and equal enjoyment of the privileges and services offered by the public
accommodation to the public. 42 U.S.C. §12182. Thus, a public accommodation may not
have a policy, practice or procedure that excludes individuals with disabilities from services.
42 U.S.C. §12182(b)(1)(A)(i).

57. The keystone for this analysis is Defendants must start by considering how the facility is
used by non-disabled guests and then take reasonable steps to provide disabled guests with a
like experience. *Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128-29, 125 S.Ct.
2169, 162 L.Ed.2d 97 (2005); *see also, Baughman v. Walt Disney World Company,* 685 F.3d
1131, 1135 (9th Cir. 2012).

58. Plaintiff was denied full and equal access to Defendants' public accommodation. Plaintiff
specifically and definitely wants to return to Defendants' public accommodation. More
specifically, Plaintiff wants to be afforded the same level of service that is offered to non-

24

disabled individuals, which Defendants have failed to provide to them as follows: Defendants failed to provide an accessible parking area and accessible route for disabled individuals, which means Plaintiff cannot park, cannot independently get out of the car and onto a wheelchair, cannot independently travel from the parking area into the public accommodation, cannot determine if there is a usable parking space, and must determine by trial and error how he is to park and move into the public accommodation; Defendants failed to provide accessible sales and service counters; Defendants' continued failure to maintain ADA accessibility as an integral part of the highest possible experience that non-disabled individuals get to independently enjoy has segregated or otherwise treated Plaintiff and others similarly situated differently, in that, Defendants' public accommodation makes Plaintiff dependent on family or an independent third party, which is not the same experience that Defendants affords to non-disabled individuals and all the foregoing failures by Defendants inhibited Plaintiff from having the same experience that non-disabled individuals have when at Defendants' public accommodation.

59. In the Preamble to Title III, the DOJ recognized that mobility impaired persons including persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of second-class citizens. 28 C.F.R. pt. 36, App. B, §36.203.

60. The ADA specifically makes it unlawful to provide individuals with disabilities with an unequal benefit, and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §12182(b)(1)(A)(ii)-(iii); 28 C.F.R. §36.202(b)-(c). Further, 28 C.F.R.

§302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. §12182(b)(1)(B); 28 C.F.R. §36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs historically have been provided inferior seating and segregated accommodations compared to non-disabled individuals; thus, relegating persons who use wheelchairs "to the status of second-class citizens." *See* 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §36.308, §36.203).

61. Thus, Defendants' use of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendants have segregated and separated the disabled individuals from the non-disabled individuals. "The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected." *H.R. Rep. No. 101-485(III),* at 50, *1990 U.S.C.C.A.N* at 473. The ADA provides a broad mandate to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream of American life." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675; 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001) (quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332).

62. Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of Defendants' facility during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of Defendants' public accommodation.

63. Defendants' conduct and Defendants' unequal treatment to Plaintiff constitute continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendants will continue to treat Plaintiff and others similarly situated unequally.

64. Defendants' failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitutes continuous discrimination and absent a Court ordered injunction, Defendants will continue to not maintain the required accessible features at Defendants' facility. 28 C.F.R. §36.211(a).

65. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have his reasonable attorneys' fees, costs, and expenses paid by Defendants pursuant to 42 U.S.C. §12205.

66. Pursuant to 42 U.S.C. §12188, this Court is authorized to enjoin these illegal acts of Defendants.

**COUNT FOUR**
**VIOLATION OF THE ADA, TITLE III**
**42 U.S.C. §12183(a)(1)**
**Failure to Design and Construct Defendants' Facility for ADA Compliance**

67. Plaintiff incorporates paragraphs 1-66 above.

68. 42 U.S.C. § 12183(a)(1) provides:

> [Discrimination includes] a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter.

69. Congress passed the ADA in part because "historically, society has tended to isolate and segregate individuals with disabilities, and such forms of discrimination . . . continue to be a serious and pervasive social problem." 42 U.S.C. §12101(a)(2). Congress found that this

27

discrimination included "segregation and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." *Id.* at §12101(a)(5). In the Preamble to Title III, the DOJ recognized that persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of a public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of second-class citizens. 28 C.F.R. pt. 36, App. B, §36.203.

70. To eliminate such segregation, Congress enacted the requirement that facilities be "readily accessible to and usable by individuals with disabilities." This requirement is intended to enable persons with disabilities "to get to, enter and use a facility." H.R. Rep. No. 101-485(III), at 499-500 (1990). This requirement requires "a high degree of convenient accessibility," *id.*, as well as access to the same services that are provided to members of the general public. "For new construction and alterations, the purpose is to ensure that the service offered to persons with disabilities is equal to the service offered to others." *Id.*

71. As the legislative history makes clear, the ADA is geared to the future with the goal being that, over time, access will be the rule rather than the exception. Thus, the ADA only requires modest expenditures to provide access in existing facilities, while requiring all new construction to be accessible. H.R. Rep. 485, Part 3, 101st Cong., 2d Sess. 63 (1990).

72. To realize the goal of a fully accessible future, Congress required that all newly constructed facilities be designed and constructed according to architectural standards set by the Attorney General. 42 U.S.C. §12183(a), §12186(b). Those Standards for Accessible Design are incorporated into the DOJ's regulations implementing Title III of the ADA, 28 C.F.R. Part 36, Appendix.

28

73. The Standards set architectural requirements for newly constructed buildings that apply to all areas of the facility, from parking areas, interior walkways and entrances, common areas, seating, toilet rooms, and sales/service areas.

74. Defendants own and operate the real property and improvements in which Defendants' facility is located and are directly involved in the designing and/or construction of the public accommodation in this litigation.

75. To date, Defendants' discriminating actions continue.

76. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have his reasonable attorneys' fees, costs, and expenses paid by Defendants pursuant to 42 U.S.C. §12205.

77. Pursuant to 42 U.S.C. §12188, this Court is authorized to enjoin these illegal actions by Defendants.

**WHEREFORE**, premises considered, Plaintiff demands judgment against Defendants on Counts One through Four and requests the following injunctive relief and declaratory relief:

1. That the Court declare that the property owned, and business operated, by Defendants as well as all Defendants' illegal actions described herein violate the ADA, as more particularly described above;

2. That the Court enter an Order enjoining Defendants to alter Defendants' facility to make Defendants' facility accessible to the full extent required by Title III of the ADA, to comply with 42 U.S.C. §12182(b)(2)(A)(iv) and implementing regulations, as stated in Count One;

3. That the Court enter an Order, in accordance with Count Two, directing Defendants to modify the policies, practices, and procedures both to remedy the numerous ADA

29

violations outlined above, in violation of 42 U.S.C. §12182(b)(2)(A)(ii), and to permanently enjoin Defendants to make Defendants' business practices consistent with ADA, Title III in the future;

4. That the Court enter an Order directing Defendants to provide Plaintiff full and equal access both to the experience and to the use of Defendants' public accommodation, and further Order Defendants to maintain the required accessible features at the public accommodation so that Plaintiff, and others similarly situated, are offered the experience that is offered to non-disabled individuals, as stated in Count Three;

5. That the Court enter an Order directing Defendants to evaluate and neutralize Defendants' policies, practices, and procedures towards individuals with disabilities for such reasonable time so as to allow Defendants to undertake and complete corrective procedures;

6. That the Court award reasonable attorneys' fees, costs, including expert fees, and other expenses of suit, to Plaintiff; and

7. That the Court enjoin Defendants to remediate Defendants' public accommodation to the proper level of accessibility required for the design and construction of Defendants' facility for first occupancy, as stated in Count Four;

8. That the Court award such other, further, and different relief as the Court deems necessary, just, and proper.

Respectfully Submitted, this the 16th Day of March 2020.

s/ _Cassie E. Taylor_
**CASSIE E. TAYLOR**
AL Bar #8297-N67R
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
Telephone: 334-819-4030
Facsimile: 334-819-4032
Email: CET@ADA-Firm.com
*Counsel for Plaintiff*

s/ _L. Landis Sexton_
**L. LANDIS SEXTON**
AL Bar No. 5057-N71L
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
Telephone: 334-819-4030
Facsimile: 334-819-4032
Email: LLS@ADA-Firm.com
*Counsel for Plaintiff*

31

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned

Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly

addressed this 16th day of March 2020 to the following:

219 South Memorial LLC
c/o Registered Agent: Ronald W. Russell
3378 Tankview Court
Montgomery, Alabama 36108

Kwik Shop Stores, Inc.
c/o Registered Agent: Russell Petroleum Corp.
3378 Tankview Court
Montgomery, Alabama 36108

s/ Cassie E. Taylor
**CASSIE E. TAYLOR**
*Counsel for Plaintiff*